UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRIS ANN JAYE,**<br><br>　　　　　**Plaintiff,**<br><br>v.<br><br>**GUBIR S. GREWAL,** *et al.*,<br><br>　　　　　**Defendants.** | Civ. No. 21-1566 (KM)(JBC)<br><br>MEMORANDUM<br>and<br>ORDER TO SHOW CAUSE |

**KEVIN MCNULTY, U.S.D.J.:**

　　This matter arises from a condominium dispute that has since developed into multiple actions, state and federal, involving dozens of defendants. *Pro se* Plaintiff Chris Ann Jaye was a condominium unit owner with the Oak Knoll Village Condominium Association ("the Association"). Prior to the initial federal action, the Association and Plaintiff both initiated actions in state court. The Association asserted claims for unpaid fees, and Plaintiff alleged damage to her unit and other misconduct on part of the Association. There was a later foreclosure on Plaintiff's unit.

　　The state courts ruled in favor of the Association. Plaintiff then filed subsequent state actions, including suits against the state court judges that ruled against her. Those state court proceedings, which I do not summarize further, then sprawled into five federal actions in the District of New Jersey, with the list of defendants growing to include various persons, including judges and lawyers, involved in the previous actions. Those five federal actions include the current matter, which was transferred from the Eastern District of Texas.

1. The 14-7471 Action

　　On December 2, 2014, Plaintiff filed her first action in federal court asserting claims against numerous New Jersey officials and state personnel

1

(Civ. No. 14-7471, DE 1).[1] Plaintiff sought injunctive and declaratory relief relating to her state court actions, some of which remained pending. Judge Pisano initially dismissed the Complaint under the *Rooker-Feldman* doctrine,[2] finding that (1) Plaintiff was a litigant in state court, (2) she lost, and (3) she initiated a federal action complaining of injuries caused by state court decisions. (Civ. No. 14-7471, DE 10 at 5). Judge Pisano also concluded that the *Younger v. Harris* doctrine[3] required abstention because "the underlying civil

---

[1]     Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Compl." = Plaintiffs' Complaint in this action (DE 1)

[2]     *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under the *Rooker-Feldman* doctrine, district courts are prohibited from exercising jurisdiction over "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 164 (3d Cir. 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

[3]     *Younger* abstention requires dismissal of certain federal claims for injunctive or declaratory relief that would interfere with pending state court proceedings. *See Younger v. Harris,* 401 U.S. 37, 41 (1971); *Samuels v. Mackell*, 401 U.S. 66, 73 (1971) ("[W]here an injunction would be impermissible under [*Younger*'s] principles, declaratory relief should ordinarily be denied as well."); *Moore v. Sims*, 442 U.S. 415, 423–26 (1979). This doctrine "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Cresci v. BCB Community Bank*, 728 F. App'x 145, 148 (3d Cir. 2018) (quoting *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1200 (3d Cir. 1992)).

*Younger* is based on principles of federalism and comity. A federal court should not abstain "simply because a pending state-court proceeding involves the same subject matter." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). However, there are "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Id.* The Supreme Court has extended *Younger* abstention "to particular state civil proceedings…that implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* at 72–73. Those circumstances are "exceptional" and are limited to the following three categories "(1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to

proceedings implicate New Jersey's interest in enforcing the orders and judgments of its Court" and Plaintiff "ask[ed] this Court, in effect, to prevent New Jersey courts from enforcing their orders and judgment." (Civ. No. 14-7471, DE 10 at 5).

The matter was later assigned to Judge Sheridan, who recused himself. Judge Shipp was then assigned the action, and he dismissed Plaintiff's second amended complaint with prejudice for failure to state a claim. (Civ. No. 14-7471, DE 64). Plaintiff brought unsuccessful motions to vacate prior orders and for reconsideration.  The United States Court of Appeals for the Third Circuit affirmed Judge Shipp's dismissal of the action, noting that, *inter alia,* that Plaintiff "essentially sought to relitigate issues the District Court had already decided." *Jaye v. Att'y Gen. New Jersey*, 706 F. App'x 781, 784 (3d Cir. 2017).

### 2. The 15-8324 Action

On November 30, 2015, Plaintiff filed claims against the Association and others (including defendants in the 14-7471 action), alleging, *inter alia,* civil violations of the Racketeer Influenced and Corrupt Organization Act. (Civ. No. 15-8324, DE 1). Judge Shipp dismissed that action with prejudice (Civ. No. 15-8324, DE 305), and Plaintiff's later efforts to reverse that dismissal failed.

### 3. The 16-7771 Action

On October 24, 2016, Plaintiff filed another action against New Jersey officials and others alleging that the defendants deprived her of civil rights by refusing to correctly apply the law to her dispute with the Association. (Civ. No. 16-7771, DE 1). Judge Shipp again dismissed the matter with prejudice (Civ. No. 16-7771, DE 81), and subsequent motions to reopen the action were denied. (Civ. No. 16-7771, DE 130).

---

perform their judicial functions." *Id.* at 78; *see also Hamilton v. Bromley*, 862 F.3d 329, 337 (3d Cir. 2017).

4.  The 17-5257 Action

On July 18, 2017, for the fourth time, Plaintiff initiated an action against New Jersey officials and the federal judges who previously dismissed her actions, again alleging a deprivation of civil rights. (Civ. No. 17-5257, DE 1). Judge Kugler, having found that Plaintiff's complaint appeared to be an attempt to relitigate issues that had already been decided, and that it otherwise asserted unfounded or merely conclusory allegations, dismissed that action. (Civ. No. 17-5257, DE 118). On March 18, 2018, Judge Kugler ordered a filing injunction due to Plaintiff's persistence in filing vexatious and duplicative litigation. (DE 131, DE 132). Motions for various forms of reconsideration were denied. Plaintiff did not take an appeal.

5(a)   The E.D. Texas Litigation

On January 26, 2021, Plaintiff filed a complaint in the United States District Court for the Eastern District of Texas against various New Jersey state and federal judges, prosecutors, and other individuals who Plaintiff alleges deprived her of civil rights. (*See generally* No. 21-1566 Compl.). Again, the allegations appear to relate to Plaintiff's disputes with the Association and the later foreclosure. While the complaint's factual allegations are vague, Plaintiff asserts generalized claims of conspiracy, fraud, coercion, extortion, and racketeering activities. By way of example, the complaint asserts: "Defendants have been and are now involved in an enterprise, employed by same or associated with same that is involved in a pattern of racketeering activities. Defendants have used the state courts to carry out their crimes resulting in the deprivation constitutional rights, extortion and repeated theft of Plaintiff's property." (Compl. ¶21).

Because the allegations in the complaint occurred in New Jersey and most of the Defendants reside in New Jersey, on January 20, 2021, the Eastern District of Texas concluded that the District of New Jersey is "a more convenient and appropriate forum," and, in the interest of justice, transferred the action to this Court. (No. 21-1566, DE 9 at 3).

        5(b)        <u>This Transferred Action</u>

On February 10, 2021, Plaintiff filed a motion for reconsideration of the transfer order. (DE 11). Although the motion is addressed to the Eastern District of Texas, Plaintiff filed it in this Court. (*See id.*). On February 26, 2021, Plaintiff then filed a "Supplemental Motion for Writ and Federal Intervention." which takes the form of a letter addressed to Judge Barker.[4] (DE 12 at 2).

In this District, the case was originally assigned to District Judge Susan D. Wigenton and Magistrate Judge Leda D. Wettre, but on March 24, 2021, it was reassigned to me and to Magistrate Judge James B. Clark, III. (DE 22). Plaintiff has continued to file various submissions, sometimes multiple submissions on the same day.

It appears that Plaintiff may have intended to file, or believed she had filed, her reconsideration motion in the Eastern District of Texas. On March 8, 2021, Plaintiff submitted a letter to Judge Wigenton of this District, to whom this action was then assigned, arguing that "the reconsideration motion [was] not one for [Judge Wigenton] to decide." (DE 21 at 18).

The Complaint in this action appears to assert substantially similar claims against many of the same defendants named in her prior federal actions. I am aware, of course, that Plaintiff did not intend to file the action in the District of New Jersey and thereby violate Judge Kugler's filing injunction. Indeed, she objects to the transfer of venue to this District, and seemingly does not wish to litigate here. The place to challenge the E.D. Tex. transfer order, however, was in that district, or possibly *via* an appeal to the U.S. Court of Appeals for the Fifth Circuit. Moreover, there is a history of vexatious and duplicative litigation, as reflected in Judge Kugler's ruling.

To clarify the situation and implement the spirit of Judge Kugler's order, I will therefore enter the following Order to Show Cause:

---

[4] Presumably, Plaintiff refers to Judge J. Campbell Barker of the Eastern District of Texas. The transfer order was signed by Magistrate Judge John D. Love. (DE 9 at 3).

## ORDER TO SHOW CAUSE

**IT IS** this 5th day of April 2021

**ORDERED** that Plaintiff shall, within 30 days of the entry of this Memorandum and Order, **SHOW CAUSE** in writing why the action should not be dismissed. Failure by Plaintiff to timely respond to this order will result in the dismissal of this proceeding.

**IT IS FURTHER ORDERED** that, while this Order to Show Cause is pending, other and further proceedings in this action are stayed.

The Clerk shall serve upon Plaintiff a copy of this Order to Show Cause by regular U.S. mail.

/s/ Kevin McNulty

_____
**Kevin McNulty
United States District Judge**